IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

**YOSEMITE AUTO (SHANGHAI), CO., LTD.,**   *

             Plaintiff   *

    v.   *   Civil Action No. 4:15-CV01641

**JRS METALS, INC., ET AL.**   *

           Defendants.   *

<u>**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**</u>

TO THE HONORABLE MELINDA HARMON
UNITED STATES DISTRICT JUDGE

      Defendants, JRS Metals, Inc. ("JRS Metals") and Dhanrajmal Chandrabose ("Chandrabose"), by and through undersigned counsel, hereby file this Memorandum in Support of their Motion to Dismiss Plaintiff's Complaint and move this Honorable Court, as authorized by the Federal Rules of Civil Procedure, Rules 9(b), 12(b)(6), 12(b)(7), 17, and 19, to enter an order dismissing Plaintiff's Complaint (1) for failure to state a claim upon which relief can be granted, (2) for failure to properly plead fraud with particularity, (3) for failure to join a necessary and indispensable party, and (4) for failure to prosecute in the name of the real party in interest, and state as follows:

**A.**     **Introduction**

      Plaintiff, Yosemite Auto (Shanghai) Co., Ltd. ("Yosemite"), alleges that it is a Chinese limited liability company. Upon information and belief, Yosemite is not now and never has been registered to do business in Texas as required by Texas law and therefore lacks the capacity to maintain this lawsuit. It has sued Defendants JRS Metals and Chandrabose for breach of

contract, fraud, and unjust enrichment. Yosemite's Complaint is a confusing, conclusory jumble of inconsistent, even contradictory allegations, which variously state that Yosemite contracted with Jim Wu, Alless Auto, SCS, JRS Metals, and Chandrabose to engage in a patently illegal scheme to buy vehicles in violation of Texas law and public policy with the intent immediately and fraudulently to export the vehicles to China in violation of the selling dealer's contract and security interest rights and United States export laws.

Neither Yosemite nor JRS Metals nor any other person or entity mentioned in Yosemite's Complaint possesses the required license to engage in the business of dealing or selling vehicles in Texas. *See* attached Affidavit of Dhanrajmal Chandrabose. Accordingly, even if Yosemite could plead and prove a contract with JRS Metals or Chandrabose to source and sell it vehicles for export to China, such a contract is illegal and against public policy and therefore void and unenforceable. Because all of Yosemite's claims alleged in the Complaint derive from illegal transactions, well established Texas law and public policy bar Yosemite from all relief in Texas courts, including any contract or tort recovery, based on the Texas unlawful acts rule and the Texas doctrine of unclean hands. Yosemite's Complaint must also be dismissed because it fails to prosecute this action in the name of the real parties in interest and fails to join necessary and indispensable parties. It would be futile to substitute the real parties in interest and to join the necessary and indispensable parties because contract or tort damages based on illegal transactions cannot be recovered under well established Texas law and public policy.

Defendants accordingly request this Court to dismiss the Complaint with prejudice and with all costs.

**B.      Yosemite Lacks Capacity To Maintain This Action**

Yosemite is a "foreign filing entity" within the meaning of Tex. Bus. Orgs. Code Ann. § 9.051 and is required to register with the Texas Secretary of State pursuant to the Tex. Bus. Orgs. Code Ann. § 9.001. *et seq*. Because Yosemite has not registered as required by law, it is prohibited from maintaining this action. Tex. Bus. Orgs. Code Ann. § 9.051(b)("A foreign filing entity … may not maintain an action, suit, or proceeding in a court of this state … on a cause of action that arises out of the transaction of business in this state unless the foreign filing entity is registered in accordance with this chapter."). S*ee, e.g., In re Immobiliere Jeuness Establissement, 422 S.W.3d 909, 912 (Tex.App. Houston [14 Dist.] 2014)*.

**C.      Yosemite's Complaint Fails To State A Claim Upon Which Relief Can Be Granted.**

A court has authority to dismiss a suit for failure to state a claim upon which relief can be granted if the complaint does not state factual allegations showing that the right to relief is plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 & n.3 (2007).

**1.      Yosemite's Contract and Tort Claims Are Barred By Illegality.**

**A.      Yosemite's Alleged Contract Is Illegal And Unenforceable.**

Yosemite alleges that JRS Metals and Chandrabose agreed to buy vehicles and then sell them to Yosemite for immediate export for re-sale in China. Not only do Yosemite's allegations fail to establish any contract between Yosemite and Defendants, *see infra*, but also the alleged contracts, even if properly pleaded, are illegal and therefore void and unenforceable as a matter of Texas law and public policy.

Texas law is clear that a person may not engage in the business of selling vehicles, directly or indirectly, including by consignment, without a dealer general distinguishing number

3

license issued by the Texas Department of Motor Vehicles. *See* Tex. Transp. Code Ann. § 503.021; Tex. Occ. Code Ann. § 2301.251(a), (b) (in Texas, a person may not engage in the business of dealing or selling cars without a license); *Denson v. Dallas County Credit Union*, 262 S.W.3d 846, 853 (Tex.App. Dallas 2008). *See also Gunderson v. Commissioner, New Hampshire Department of Safety,* 108 A.3d 619, 623, 167 N.H. 215, 220 (N.H., 2014)(similarly New Hampshire precludes unlicensed persons from selling and exporting vehicles to China). Neither Yosemite, nor JRS Metals, nor Alless Auto, nor any other person or entity mentioned in Yosemite's Complaint has any kind of license to engage in the business of dealing or selling cars in Texas. *See* Affidavit of Dhanrajmal Chandrabose, attached hereto as Exhibit 1.

Texas courts have consistently held that vehicle sales by unlicensed persons are unlawful and cannot form the basis for contract or tort recovery as a matter of Texas law. *See, e.g., Denson v. Dallas County Credit Union,* 262 S.W.3d 846, 854 (Tex.App. Dallas 2008)(unlicensed dealer's contract and tort claims barred by Texas' illegal contract and unlawful acts rules); *Villanueva v. Gonzalez*, 123 S.W.3d 461, 467 (Tex.App. San Antonio 2003)(affirming grant of summary judgment on contract and tort claims based on an unenforceable illegal agreement); *Ahumada v. Dow Chem. Co.,* 992 S.W.2d 555, 558–59 (Tex.App. Houston [14th Dist.] 1999, pet. denied) (holding fisherman had no right to recover for damages allegedly suffered when an oil spill prevented fishing in a bay because despite having a license to fish, a regulation specifically prohibited fishing in the bay at the time of the spill); *M.M.M., Inc. v. Mitchell,* 153 Tex. 227, 265 S.W.2d 584, 586 (Tex.1954)(contract to provide engineering services performed by unlicensed engineer was illegal and unenforceable because it was incapable of being performed in a legal manner); *Rodriquez v. Love*, 860 S.W.2d 541, 544 (Tex.App. El Paso 1993)(unlawful act rule provides that no action may be predicated upon an admittedly unlawful act). To hold otherwise

would allow a person to accomplish indirectly what he is prohibited from doing directly and frustrate the public policies behind the legal protections of Texas law. *See Denson v. Dallas County Credit Union*, 262 S.W.3d at 854. "The distribution and sale of motor vehicles in this state vitally affects the general economy of the state and the public interest and welfare of its citizens. This chapter shall be liberally construed to accomplish its purposes, including the exercise of the state's police power to ensure a sound system of distributing and selling motor vehicles through: (1) licensing and regulating manufacturers, distributors, converters, and dealers of motor vehicles; ...." *See* Tex. Occ. Code Ann. § 2301.001.

It is also unlawful and fraudulent for a buyer of Range Rover vehicles to purchase new vehicles with the intent of immediately exporting them. By way of example, the Range Rover of North Houston dealership requires buyers to sign a written "Agreement Not To Export And Security Agreement," in which the buyer agrees not to export the vehicle for 12 months and to grant the dealer a security interest in the vehicle to secure the promise not to export:

> ... Customer will not, for a period of twelve (12) months (one (1) year) from the Date of Purchase or Lease of the Vehicle, Transfer the Vehicle outside the United States, export or attempt to export the Vehicle outside the United States, or Transfer the Vehicle to any person who exports or attempts the export the Vehicle outside the United States. This Agreement is a material condition to the sale or lease of the Vehicle to Customer, and absent Customer's consent to these Transfer restrictions, Dealer would not and will not sell or lease the Vehicle to Customer.

*See* "Agreement Not To Export And Security Agreement," attached to Affidavit of Dhanrajmal Chandrabose, attached hereto as Exhibit 1. This security interest in the vehicle granted to the dealer makes the buyer's breach of the agreement and immediate export of the vehicle illegal and a violation of United States export laws. *See* 19 C.F.R. § 192.2 (prohibiting export of vehicle without exporter's providing lienholder's express written consent as part of required export

documentation); 15 C.F.R. § 30.4 (exporter required to file all required export documentation prior to export of vehicle).

In fact, Yosemite, Jim Wu, Alless Auto, JRS Metals, and Chandrabose all knew that the dealing and selling of vehicles such as Range Rovers, for immediate export to and re-sale in China was improper and needed to be concealed from the Range Rover dealership or it would refuse to sell the vehicles because the transaction was in violation of its Agreement Not To Export And Security Agreement. Mr. Wu of Alless Auto expressly warned JRS Metals to conceal these facts from the Range Rover dealership when purchasing vehicles for Alless Auto. *See* Affidavit of Dhanrajmal Chandrabose, attached hereto as Exhibit 1, and October 24, 2013, email, attached thereto.

The contract transactions Yosemite alleges in its Complaint are all fraudulent and illegal, and therefore unenforceable, because they could only occur in violation of Texas and United States laws and regulations. It is well established that a contract to do a thing which cannot be performed without violation of the law violates public policy and is void. *Villanueva v. Gonzalez,* 123 S.W.3d 461, 464 (Tex.App. San Antonio 2003)(citing *Lewis v. Davis,* 145 Tex. 468, 199 S.W.2d 146 (1947)). The purpose behind this rule is not to protect or punish either party to the contract, but to benefit and protect the public. *Id. See also Denson v. Dallas County Credit Union,* 262 S.W.3d at 852. Accordingly, Yosemite's alleged contracts with JRS Metals and/or Chandrabose, even if properly pleaded, were illegal, void, and unenforceable.

### B.    The Texas Unlawful Acts Rule Bars Yosemite's Tort Claims.

The well established "unlawful acts rule" provides that no action may be predicated upon an admittedly illegal act. *See Denson v. Dallas County Credit Union,* 262 S.W.3d 846, 855 (Tex.App. Dallas 2008); *Haase v. Glazner,* 62 S.W.3d 795, 796 (Tex. 2001)(claimant cannot

recover on a contract that is unenforceable under the Statute of Frauds); *Macias v. Moreno,* 30 S.W.3d 25, 29 (Tex.App. El Paso 2000, pet. denied); *Stevens v. Hallmark,* 109 S.W.2d 1106, 1106 (Tex.Civ.App. Austin 1937, no writ) ("A person cannot maintain a cause of action if, in order to establish it, he must rely, in whole or in part, on an illegal or immoral act or transaction to which he is a party."); *Villanueva, supra,* 123 S.W.3d at 463–64 (holding claims for breach of contract and fraud failed because they arose out of an illegal contract); *Saks v. Sawtelle, Goode, Davidson, & Troilo,* 880 S.W.2d 466, 469 (Tex.App. San Antonio 1994, writ denied) ("It may be assumed, as undisputed doctrine, that no action will lie to recover a claim for damages, if to establish it the plaintiff requires aid from an illegal transaction, or is under the necessity of showing or in any manner depending upon an illegal act to which he is a party.") (citing *Gulf v. Johnson,* 71 Tex. 619, 9 S.W. 602, 603 (Tex.1888)).

The Texas unlawful acts rule bars Yosemite's claims arising in tort because they are inextricably intertwined with the illegal contracts alleged in Plaintiff's Complaint for Defendants to sell vehicles without a license and to defraud Range Rover by illegally selling vehicles for the immediate export to and re-sale in China in breach of the Range Rover "Agreement Not To Export And Security Agreement" and United States export laws. Texas courts do not lend their assistance to claimants in collecting contract or tort damages if it would require aid from an illegal transaction. *Gulf v. Johnson,* 71 Tex. 619, 9 S.W. 602, 603 (Tex.1888).

### 2.     Yosemite Fails To Plead A Contract With Chandrabose or JRS Metals.

Yosemite variously states that it had agreements with Jim Wu, Alless Auto, SCS, Chandrabose, and JRS Metals. However, nowhere in its Complaint does Yosemite actually state what the terms of any particular contract were, except that they all involved the sale and export

of vehicles in violation of Texas and United States laws. In particular, Yosemite fails to plead the essential elements of any enforceable contract with JRS Metals or Chandrabose.

To prove an action for breach of contract, a plaintiff must establish the existence of an enforceable contract. *Advantage Physical Therapy, Inc. v. Cruse,* 165 S.W.3d 21, 24 (Tex.App. Houston [14th Dist.] 2005, no pet.). The elements of an enforceable contract are: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) a communication that each party consented to the terms of the contract; (5) execution and delivery of the contract with an intent it become mutual and binding on both parties; and (6) consideration. *Coleman v. Reich*, 417 S.W.3d 488 (Tex.App. Houston [14 Dist.] 2013). The acceptance must be identical to the offer. *Gilbert v. Pettiette,* 838 S.W.2d 890, 893 (Tex.App. Houston [1st Dist.] 1992, no writ). "It is well-settled that a binding contract must have an offer and an acceptance, and the offer must be accepted in strict compliance with its terms." *Cruse,* 165 S.W.3d at 25. An acceptance must not change the terms of an offer; if it does, the offer is rejected. *Antonini v. Harris Cnty. Appraisal Dist.,* 999 S.W.2d 608, 610 (Tex.App. Houston [14th Dist.] 1999, no pet.). A material change in a proposed contract constitutes a counteroffer, which must be accepted by the other party for there to be a valid contract. *Id.* at 611.

Yosemite's Complaint nowhere alleges specific facts establishing the elements of any lawful and enforceable contract between Yosemite and either JRS Metals or Chandrabose. Yosemite identifies no writing evidencing any agreement between Yosemite and either JRS Metals or Chandrabose, V.T.C.A., Bus. & C. § 26.01, nor any admissible evidence of specific facts establishing the terms of any oral contract. All that is alleged are patently illegal, void, and unenforceable transactions in violation of Texas and United States laws. JRS Metals and Chandrabose deny entering into any contract with Yosemite for anything or receiving any

payment from Yosemite for anything. *See* Affidavit of Dhanrajmal Chandrabose, attached hereto as Exhibit 1.

**D.      Yosemite's Unjust Enrichment Claim Is Barred By The Ancient Precept Of Unclean Hands.**

Yosemite's equitable unjust enrichment claim is subject to the ancient precept that he who comes into equity must come with clean hands, a "fundamental of equity jurisprudence." *Harris v. Sentry Title Co.*, Inc., 715 F.2d 941, 957 (5th Cir. (Tex.) 1983) (citing to 27 Am.Jur.2d Equity § 136, at 666–67), *mandate recalled and modified on unrelated grounds*, 727 F.2d 1368, 1371 (5th Cir. (Tex.) 1984). "There is no authority by which equity can come to the aid of an illegal and fraudulent scheme, regardless of the beneficence of the ultimate purpose." *In re Mutual Leasing Corp.,* 449 F.2d 811, 815 (5th Cir. 1971). Because Yosemite's unjust enrichment claim depends on an illegal and fraudulent scheme for the unlicensed sale of vehicles in violation of Texas law and their immediate illegal and fraudulent export contrary to the Range Rover "Agreement Not To Export And Security Agreement" and United States export laws, Yosemite's unclean hands bar recovery for unjust enrichment as a matter of law. *Mursor Builders, Inc. v. Crown Mountain Apartment Associates*, 467 F.Supp. 1316, 1334, 15 V.I. 53, 92 (D.C.Virgin Islands 1978)(plaintiff is barred from invoking an equitable theory of recovery by virtue of its "unclean hands" ); *U.S. v. I-12 Garden Apartments*, 703 F.2d 900, 903 (5th Cir. (La) 1983). One whose business violates Texas and United States law and public policy does not come into court with "clean hands" and therefore cannot be given relief in a court of equity. *City of Wink v. Griffith Amusement Co.,* 100 S.W.2d 695, 702, 129 Tex. 40, 50-51 (Tex. 1936); *Orthodontic Centers Of Texas, Inc. v. Wetzel*, 410 Fed.Appx. 795, 800, 2011 WL 365287, at *4 (5th Cir.

(Tex.) 2011)(public policy would not be served by court assisting a corporation that engaged in an unlicensed business transaction to pursue a claim to recover money that it paid to do so).

### E.     Yosemite Failed To Plead Fraud With Particularity

In all pleadings alleging fraud, the circumstances constituting fraud must be pleaded with particularity. Fed. R. Civ. P. 9(b). A plaintiff will not survive a Rule 9(b) motion to dismiss on the pleadings by simply alleging that a defendant had fraudulent intent. In order to adequately plead, Rule 9(b) requires the plaintiff to allege "the particulars of 'time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby.'" *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. (Tex.) 1994); *Herrmann Holdings Ltd. v. Lucent Technologies Inc.,* 302 F.3d 552, 566 (5th Cir. (Tex.) 2002); *Williams v. WMX Technologies, Inc.,* 112 F.3d 175, 177-78 (5th Cir. (Tex.) 1997); *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1018 (5th Cir. (Tex.) 1996).

Yosemite's fraud claims are based exclusively on alleged misrepresentations by JRS Metals to Alless Auto, not to Yosemite. For example, the documents comprising Exhibit C to Yosemite's Complaint were allegedly provided by JRS Metals to Alless Auto, not to Yosemite. Yosemite alleges that in reliance on the alleged misrepresentations contained in the records and documents provided by JRS Metals to Alless Auto, Alless Auto paid JRS Metals for the vehicles which were intended for re-sale to Yosemite and immediate (and illegal) export to China. Complaint, at paragraph 32. Yosemite's Complaint includes no allegations indicating the specific "time, place and contents" of misrepresentations by JRS Metals or Chandrabose directly to Yosemite. *Tuchman v. DSC Communications Corp.,* 14 F.3d 1061, 1068 (5th Cir.1994); *see also Melder v. Morris,* 27 F.3d 1097, 1100 n. 5 (5th Cir.1994); *Shushany v. Allwaste,* 992 F.2d 517, 520 (5th Cir.1993). Yosemite's Complaint at most alleges that JRS Metals breached an

agreement with Alless Auto, an agreement which in any event would have been illegal, void, and unenforceable because it would be in violation of Texas law, the Range Rover dealer's contract and security interest, and United States export laws. Because Yosemite has failed to set forth admissible evidence of specific facts sufficient to indicate conscious behavior on the part of Defendants to defraud Yosemite, Yosemite has failed to adequately plead fraudulent intent under Rule 9(b), and its fraud claims must be dismissed for failure to plead fraud with particularity. *Herrmann Holdings Ltd. v. Lucent Technologies Inc.*, 302 F.3d 552, 566 (5th Cir. (Tex.) 2002).

**F.      Yosemite's Complaint Should Be Dismissed Because It Fails To Prosecute The Action In The Name Of The Real Party In Interest.**

Rather than have Jim Wu and/or Alless Auto prosecute any claim on the alleged contracts with JRS Metals and Chandrabose, Yosemite has attempted to pose as the alleged contracts' counter party, even though any negotiations occurred solely between JRS Metals and Alless Auto, not Yosemite; and any alleged contract arose between JRS Metals and Alless Auto, not Yosemite. *See, e.g.,* Complaint, paragraphs 31 and 32. As the March 13, 2013, email attached to the Affidavit of Dhanrajmal Chandrabose (Exhibit 1 hereto) demonstrates, all contract discussions with Yosemite about selling vehicles for immediate export to and re-sale in China occurred solely between Yosemite and Alless Auto. JRS Metals only dealt with Alless Auto and Jim Wu. And in any case, the substance of Yosemite's Complaint is an illegal transaction for the unlicensed sale of vehicles and their fraudulent and illegal export contrary to United States export laws.

Rule 17(a)(1) of the Federal Rules of Civil Procedure requires that all actions be prosecuted in the name of the real party in interest. Rule 17(a)(3) provides that no action should be dismissed for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be

substituted into the action. However, a court retains discretion to dismiss an action where there was no semblance of any reasonable basis for the naming of an incorrect party. *See Advanced Magnetics, Inc. v. Bayfront Partners, Inc.,* 106 F.3d 11, 20 (2d Cir. (N.Y.) 1997). A Rule 17(a) substitution of plaintiffs should not be allowed when the change alters the original complaint's factual allegations as to the events or the participants. *See Magallon v. Livingston*, 453 F.3d 268, 273 (5th Cir. (Tex.) 2006)(5th Circuit case law has put a gloss on Rule 17′s unqualified language, holding that a plaintiff must have a reasonable basis for naming the wrong party to be entitled to ratification, joinder, or substitution). To be entitled to the benefit of Rule 17(a) joinder or substitution instead of dismissal, a plaintiff must first establish that when he brought the action in his own name, he did so as the result of an honest and understandable mistake. *Feist v. Consolidated Freightways Corp.*, 100 F.Supp.2d 273, 276 (E.D.Pa. 1999), *aff'd*, 216 F.3d 1075 (3rd Cir. 2000), *cert. denied,* 532 U.S. 920 (2001).

This is a case where the plaintiff has not made an honest mistake and where the substitution of the real parties in interest, Jim Wu and/or Alless Auto, would materially alter the original complaint's factual allegations. In fact, Yosemite's Complaint would have to be completely recast to align it with the real parties in interest and the real facts. There is no point in allowing amendment of the Complaint and substitution of Wu or Alless Auto, however, since the amendment and substitution would be futile. The underlying contracts being sued on were patently illegal, void, and unenforceable no matter who was involved. *Filgueira v. U.S. Bank Nat. Ass'n*, 734 F.3d 420, 423 (5th Cir. (Tex.) 2013) )(court acts within its discretion when dismissing a motion to amend that is futile); *Johnson v. Deutsche Bank Nat. Trust Co.,* 2010 WL 4962897, at *1 (S.D.Tex. 2010)(a plaintiff should be denied leave to amend a complaint if the

proposed change would advance a claim that is legally insufficient on its face); *Glassman v. Computervision Corp.,* 90 F.3d 617, 623 (1st Cir. (Mass.) 1996).

**G.**     **Yosemite failed to join necessary and indispensable parties.**

The claims and matters alleged in Yosemite's Complaint cannot be adjudicated without the joinder of Jim Wu and/or Alless Auto, the actual parties to the alleged contracts. *See, e.g., Ash Grove Texas, L.P. v. City of Dallas,* 2009 WL 3270821, at *15 (N.D.Tex. 2009)(court cannot adjudicate rights of contracting parties without their presence before it); *Altava Health Marketing, Ltd. v. Shortgrass, Inc.,* 2005 WL 2277598, at *9 (S.D.Tex. 2005)(federal courts consistently hold that a party to an agreement in dispute is an indispensable party under Fed.R.Civ.P. 19(a) in a suit on that agreement). Yosemite's failure to prosecute this action in the name of the real parties in interest, *see supra*, is thus not only a fatal pleading defect but a calculated and cynical attempt to avoid the fact that the real parties in interest, Alless Auto and Jim Wu, as Texas citizens, would destroy diversity jurisdiction. Accordingly, Yosemite's Complaint must be dismissed pursuant to Rule 12(b)(7) for failure to join necessary and indispensable parties.

Rule 12(b)(7) allows dismissal for "failure to join a party under Rule 19." Rule 19 provides for the joinder of all parties whose presence in a lawsuit is required for the fair and complete resolution of the dispute at issue. It further provides for the dismissal of litigation that should not proceed in the absence of parties that cannot be joined. *Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1308-09 (5th Cir. (La.) 1986).

Rule 12(b)(7) analysis entails two inquiries under Rule 19. The court must first determine under Rule 19(a) whether a person should be joined to the lawsuit. If joinder is warranted, then the person will be brought into the lawsuit. But if such joinder would destroy the court's

jurisdiction, then the court must determine under Rule 19(b) whether to press forward without the person or to dismiss the litigation. Factors to consider under Rule 19(b) include "(1) prejudice to an absent party or others in the lawsuit from a judgment; (2) whether the shaping of relief can lessen prejudice to absent parties; (3) whether adequate relief can be given without participation of the party; and (4) whether the plaintiff has another effective forum if the suit is dismissed."

Because in this case, the alleged contracts at issue were between Alless Auto and/or Jim Wu on the one hand and JRS Metals and/or Chandrabose on the other, binding relief cannot be given without the presence of Alless Auto and Jim Wu. *See Ash Grove Texas, L.P. v. City of Dallas* and *Altava Health Marketing, Ltd. v. Shortgrass, Inc., supra.* The disposition of the action in their absence would as a practical matter leave JRS Metals and Chandrabose subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the absent parties' interests. Fed.R.Civ.P. 19(a)(2)(ii). Once it is determined that Alless Auto and Wu are persons to be joined and that their joinder would destroy diversity jurisdiction, the court must, using Rule 19(b), "whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." The determination of that question under the facts and circumstances of this case requires dismissal.

Yosemite's interest in a federal forum is weak. Relief in the state courts is available to it, and Texas state courts are as convenient to it and the witnesses as the federal court. Yosemite's case in federal court is in its preliminary stages, and Yosemite has no judgment in federal court to protect. JRS Metals and Chandrabose have strong interests in avoiding multiple litigation or inconsistent relief, and in any case under well established law, the parties' alleged contracts cannot be adjudicated without all of the contracting parties before the court. The likelihood of

inconsistent liability and the interest in avoiding multiple and repetitive litigation militate in favor of dismissal. There is no special reason that this suit must be brought in federal court. All the parties and witnesses will be available in state court. There is no barrier to any of the parties' claims that does not exist in federal court. The measure of relief is the same.

Accordingly, Yosemite's Complaint should be dismissed for failure to join necessary and indispensable parties.

## H.    Conclusion

For the foregoing reasons, this Honorable Court should dismiss Plaintiff's Complaint with prejudice and with all costs.

Respectfully submitted,

DATED: this 17th day of February, 2016        s/ Joseph M. Grant_____
                                              Joseph M. Grant
                                              THE GRANT LAW FIRM
                                              ATTORNEY-IN-CHARGE
                                              S.D. TX Bar No. 6217
                                              Texas State Bar No. 08301520
                                              1701 Hermann Drive #502
                                              Houston, TX 77004
                                              Telephone No. (713) 880-3331
                                              Facsimile No. (713) 880-3332
                                              EMAIL: brr2@mac.com
                                              Attorney for Defendants, JRS Metals, Inc.
                                              and Dhanrajmal Chandrabose

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of February, 2016, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ Joseph M. Grant
Joseph M. Grant

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| **YOSEMITE AUTO (SHANGHAI), CO., LTD.,** | * |
| Plaintiff | * |
| v. | *    Civil Action No. 4:15-CV-01641 |
| **JRS METALS, INC., ET AL.,** | * |
| Defendant. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## AFFIDAVIT OF DHANRAJMAL CHANDRABOSE

Before me, the undersigned notary, on this ___ day of February, 2016, personally appeared Dhanrajmal Chandrabose, the affiant, a person whose identity is known to me. After I administered an oath, affiant testified as follows:

1.      My name is Dhanrajmal Chandrabose. I am competent to make this affidavit based on my review of the records of JRS Metals, Inc. and my personal knowledge. The facts contained herein are true and correct. If I were called to testify in this matter, I would testify substantially in accordance with the facts set forth herein. All of the documents attached hereto are true, correct, authentic, and complete copies of the originals maintained among the business records of JRS Metals, Inc. I further certify that I am familiar with the record keeping practices of JRS Metals, and that these business records are maintained in the regular course of business.

2.      I am the President of JRS Metals, Inc., a corporation organized under the laws of the State of Texas and registered with the State of Texas as required by law to do business in the State of Texas.

3.      JRS Metals does not have any kind of license to engage in the business of dealing or selling cars in Texas. Upon information and belief, neither Yosemite, nor Alless Auto, nor any other person or entity mentioned in Yosemite's Complaint has any kind of license to engage in the business of dealing or selling cars in Texas. I have also made a diligent search of the Texas Department of Motor Vehicles' online Motor Vehicle Dealers List located at http://www.txdmv.gov/dealers-portal/motor-vehicle-dealers, and it does not contain any listing for Yosemite, or Alless Auto, or any other person or entity mentioned in Yosemite's Complaint as having any kind of license to engage in the business of dealing or selling cars in Texas.

4.      Neither I nor JRS Metals ever contracted with Yosemite or received funds or payments from Yosemite for anything. Neither I nor JRS Metals ever contracted with Yosemite to sell Range Rover vehicles to Yosemite. As the attached March 13, 2013, email demonstrates, while

EXHIBIT 1

JRS Metals and I had discussions with Alless Auto and Jim Wu about selling vehicles, all discussions about selling vehicles to Yosemite for export to and re-sale in China occurred between Yosemite and Alless Auto. JRS Metals only dealt with Alless Auto and Jim Wu regarding vehicle purchases.

5.      Yosemite, Jim Wu, Alless Auto, JRS Metals, and I all knew that the buying of vehicles such as Range Rovers with the intention of immediately re-selling them for export to and re-sale in China was improper and needed to be concealed from the Range Rover dealership or it would refuse to sell the vehicles because the transaction was in violation of its no-export policy. A representative example of that policy is the Range Rover North Houston's "Agreement Not To Export And Security Agreement" attached hereto and incorporated herein for all purposes. Mr. Wu of Alless Auto expressly warned me to conceal these facts from the Range Rover dealership. *See* attached October 24, 2013, email.

D.S. Chandrabose
Dhanrajmal Chandrabose

SWORN TO and SUBSCRIBED before me by Dhanrajmal Chandrabose on Feb. 16 , 2016.

TERRI CRUTCHFIELD
Notary Public, State of Texas
Comm. Expires 04-21-2016
Notary ID 126490536

Notary Public in and for
the State of Texas

## AGREEMENT NOT TO EXPORT AND SECURITY AGREEMENT

This AGREEMENT NOT TO EXPORT AND SECURITY AGREEMENT (referred to herein as "Agreement") is made and entered into between the "Dealer" and the "Customer" as defined below:

**1.** When used in this Agreement, the words in quotations are defined as follows:

A. "Customer": _____

B. Whose address is: _____

_____

C. "Date of Purchase or Lease" is: _____

D. "Dealer" means: SONIC HOUSTON JLR, LP D/B/A LAND ROVER HOUSTON NORTH AND JAGUAR HOUSTON NORTH

E. "JLRNA" means JAGUAR LAND ROVER OF NORTH AMERICA, LLC

F. "Obligations" means all liquidated damages due hereunder as well as any and all other amounts, including, but not limited to, costs, expenses, attorneys fees and any and all other financial detriments paid, accrued or incurred by Dealer arising out of or related to this Agreement, including those described in paragraph 8 below.

G. "Purchase Price" is: _____.

H. "Transfer" includes sale, lease, sublease, bailment, pledge, or any other method by which possession of, use of or rights in the Vehicle are conveyed, whether temporary or permanent and whether whole or in part, or otherwise alienated.

I. "Vehicle" means (indicate make and model)

_____
(MAKE AND MODEL)

J. (Indicate year), _____
(YEAR)

1

K.  Whose vehicle identification number is (VIN),

_____

(VIN)

## _The security interest granted in this Agreement is:_

☐subordinate to the security interest granted to

_____

FINANCIAL LIEN HOLDER

_____

LAND ROVER HOUSTON NORTH

☐ not subordinate to any other security interest except as required by law.  At the option of Dealer, a lien may be placed on above-mentioned vehicle for a period of twelve (12) months from date of purchase.  Lien holder will be SONIC HOUSTON JLR, LP D/B/A LAND ROVER HOUSTON NORTH AND JAGUAR HOUSTON NORTH.  THE TITLE APPLICATION LISTING SONIC HOUSTON JLR, LP D/B/A LAND ROVER HOUSTON NORTH AND JAGUAR HOUSTON NORTH, AND THIS EXECUTED AGREEMENT NOT TO EXPORT AND SECURITY AGREEMENT, WILL BE FORWARDED TO US CUSTOMS/ HOME LAND SECURITY OR ANY OTHER RELEVANT PARTY, FOR THE SOLE PURPOSE OF EXPORT PREVENTION.  _**ANY ATTEMPTED**_ EXPORTATION OF THE ABOVE LISTED VEHICLE FOR A PERIOD OF TWELVE (12) MONTHS FROM DATE OF PURCHASE WILL BE AN IMMEDIATE VIOLATION OF THE CODE OF FEDERAL REGULATIONS TITLE 19 PART 192.2 PARAGRAPH B SUB SECTION 2.

**2.**  Customer acknowledges and understands (i) that Dealer is an authorized franchised dealer of JLRNA, (ii) that JLRNA prohibits its authorized dealers from exporting new and certain pre-owned JAGUAR, LAND ROVER vehicles outside the United States for twelve (12) months from the date of purchase or lease of the vehicle regardless of whether exporting is by Dealer, Customer or any direct or indirect transferee of Dealer or Customer, (iii) that violation of said prohibition will result in charges and other penalties to or against Dealer by JLRNA and other sanctions or damages under Dealer's franchise agreement with JLRNA and (iv) that the Vehicle is subject to the foregoing restrictions.

**3.**  Customer agrees that Customer will not, for a period of twelve (12) months (one (1) year) from the Date of Purchase or Lease of the Vehicle, Transfer the Vehicle outside the United States, export or attempt to export the Vehicle outside the United States, or Transfer the Vehicle to any person who exports or attempts the export the Vehicle outside the United States.  This Agreement is a material condition to the sale or

2

lease of the Vehicle to Customer, and absent Customer's consent to these Transfer restrictions, Dealer would not and will not sell or lease the Vehicle to Customer.

**4.** Customer agrees that if for any reason the Vehicle is exported outside of the United States at any time within twelve (12) months of the Date of Purchase or Lease of the Vehicle by Customer, regardless of whether such Transfer is by Customer or any purchaser, assignee or successor to Customer or any other person and without regard to any fault by or knowledge of Customer of such Transfer, Customer will pay to Dealer liquidated damages in the amount of Eighteen percent (18%) of the Purchase Price of the Vehicle. Customer agrees that any notice of exportation received or dated within twelve (12) months of the date of Purchase or Lease will be deemed conclusive evidence of the Transfer or attempted Transfer of the Vehicle in violation of this Agreement and that liquidated damages, along with all other Obligations due hereunder, shall be immediately due and payable as of the date of the notice of exportation. Nothing herein shall limit the rights of Dealer under this Agreement to enforce this Agreement based on evidence other than a notice of exportation. Any Transfer or attempted Transfer of the Vehicle in violation of this Agreement, as well as violation or breach of any other provision of this Agreement, constitutes a default under the Agreement, whereupon Dealer shall have all rights under the law, including but not limited those of a secured party as provided herein and under the law.

**5.** Customer agrees and acknowledges that it would be impractical or difficult to fix the actual Damages to Dealer if the Vehicle is exported outside of the United States and further agrees that the liquidated damages hereunder are reasonable.

**6.** Customer hereby grants to Dealer a security interest in the Vehicle, all personal property attached to or in the Vehicle, and all proceeds thereof, including all after acquired property, to secure the Obligations of Customer under this Agreement. Dealer is hereby further authorized to take any and all action necessary or appropriate to perfect said security interest. Upon breach of this Agreement, Dealer shall have all rights of a secured party under Article 9 of the Uniform Commercial Code including, but not limited to, the right to take possession, the right to disable the Vehicle or other collateral, the right to dispose of the collateral by sale, lease, license or otherwise, whether by public or private transaction, the right to pursue judicial process and the right to dispose of the collateral without judicial process.

**7.** In the event any portion of this Agreement is determined by a court of competent jurisdiction to be unenforceable, such unenforceability shall not affect the legality or enforceability of the remainder of this Agreement. This Agreement is binding upon all successors, assigns or transferees of Customer.

**8.** Customer agrees to pay to and indemnify Dealer for any and all costs, expenses or financial detriment of any type incurred by Dealer in enforcing this Agreement or any aspect thereof, including, but not limited to, all costs and expenses incurred in any civil action or suit, reasonable attorneys' fees, court costs and litigation, costs or expenses incurred in the repossession of, storage of, or disposition of any

3

collateral, and all other financial detriments paid, accrued or incurred by Dealer arising out of or related to this Agreement.

**9.**   In the event Customer decides to sell the Vehicle within twelve (12) months of the purchase date, Customer agrees to bring the Vehicle back to Dealer so that Dealer has exclusive rights to repurchase the vehicle during this twelve (12) month period.  During this twelve (12) month period, Dealer has the right to place its name on the Vehicle's title to ensure that the Dealer's exclusive repurchase rights are protected.  Customer can accept or reject Dealer's repurchase offer; provided, however, that this Agreement shall be binding upon Customer's successors or assigns with respect to the Vehicle during this twelve (12) month period following the purchase date.  After the expiration of twelve (12) months from the purchase date, and upon written request from Customer to Dealer, Dealer will cooperate with Customer to remove Dealer's name from the Vehicle's title within thirty (30) days of receipt of Customer's written request.

**By signing this Agreement the parties acknowledge that they have read, understood and agree to the terms hereof, including but not limited to Dealer's right to place a security interest on the title for a period of twelve (12) months.  Customer acknowledges receipt of a copy of this Agreement.**

**DATED** the _____ day of _____, _____.
$\qquad$ (Day) $\qquad\qquad$ (Month) $\qquad$ (Year)

**LAND ROVER HOUSTON NORTH
AND JAGUAR HOUSTON NORTH**

By: _____

_____                    (Dealer Representative Signature)
(Customer Signature)

_____                    _____
(Customer Printed Name)                              (Dealer Representative Printed Name)

_____
(Customer Signature)

_____
(Customer Printed Name)

4

| | |
|---|---|
| **From:** | Jim Wu [jimwu@usachinabridge.com] |
| **Sent:** | Thursday, March 13, 2014 2:44 AM |
| **To:** | jackbose |
| **Subject:** | Fwd: Jack.pdf |
| | |
| **Flag Status:** | Flagged |

Jack,

The comments from Tom is below and I already translate them for you.

---------- Forwarded message ----------
From: **Tom** <shtom8621@yeah.net>
Date: 2014-03-12 17:53 GMT-05:00
Subject: Re: Jack.pdf
To: Jim Wu <jimwu@usachinabridge.com>

这台不行，两驱银色，银色最难卖了。
This X5 is not OK. 2 drive is not good and Silver color is not good too.
宝马方面：
X5后续都要四驱，棕色、黑色、白色，其中棕色在六万二以下，黑色白色在六万以下。
For BMW X5, we need 4 drive and for the color Brown should be lower than $62,000 and for the color Black or White should be lower then $65,000.
X6下半年转款，官网更新后我们会预订一些。
For BMW X6, we will book some after the update from the offical website in the second harf of this year since there are lot of changes for the X6 this year.
保时捷方面：
Macan七月份会到车，我们需要一些
Porsche-Mecan will be in the dealer in July of this year and we will need some.
卡宴，四月份中期转款，五月份等官网更新后我们订一些。
Porsche-Cayenne will change in the middle of April and we will book after May 2014.
路虎方面：
发现4需求大，除银色外都要。
Land Rover-Discovery 4, a lot of demend now and we need all colors except Silver.
加长揽胜、揽胜3.0需求大，除银色外都要。
Range Rover 3.0 and Range Rover-Long Wheel Base 3.0, a lot of demend and we need all colors except silver.
揽运黑色、白色、红色有就拿。
Range Rover Sports 3.0, Black, White, and Red is good and we can take these colors.
奔驰方面：
GL350继续需要，黑色，大天窗七万五左右，小天窗七万二左右。
Mecerdes, we need GL350, big roof less than $75,000 and small roof less than $72,000.

Since more than 3.0 will charged big tax, we always need 3.0.

Jim

发自我的 iPhone

在 2014年3月12日，17:10，Jim Wu <jimwu@usachinabridge.com> 写道：


      Jim Wu
      President
      US-China International Business Network
      832-581-3118 (Office)
      832-875-1816 (Cell)
      832-626-9528 (Fax)


      ---------- Forwarded message ----------
      From: **jackbose** <jack@jrspipesmetals.com>
      Date: Wed, Mar 12, 2014 at 3:03 PM
      Subject: Jack.pdf
      To: Jim Wu <jimwu@usachinabridge.com>


      Jim,

      You want this BMW ?
      Let me know ASAP





邮件带有附件预览链接，若您转发或回复此邮件时不希望对方预览附件，建议您手动删除
链接。
**共有 1 个附件**
Jack.pdf(75K)
        极速下载 在线预览

      <Jack.pdf>

| From: | Jim Wu [jimwu@usachinabridge.com] |
| --- | --- |
| Sent: | Thursday, October 24, 2013 8:31 PM |
| To: | jackbose |
| Subject: | Re: Car Purchasing |
| Attachments: | LR HSE BB.pdf; LR HSE BRB.pdf; LR HSE GB.pdf; LR HSE WB.pdf; Fuji.pdf; Havana.pdf; Luxor.pdf |

Dear Jack,

Yes, if you can, please book the Land Rover as many as possible based in the attachment. But, you need be careful and if the dealer think you will export the SUVs, they can cancel your book anytime.

Jim
Jim Wu
President
US-China International Business Network
832-581-3118 (Office)
832-875-1816 (Cell)
832-626-9528 (Fax)


On Thu, Oct 24, 2013 at 7:11 PM, jackbose <jack@jrspipesmetals.com> wrote:
> Dear Jim,
>
> How are you I book the
> Land Rover Today. I will get the confirmation email from the dealer
> tomorrow I can book one moreLand Rover with the same dealer very soon
> if you Want. I will book the rest the card you want by tomorrow. I
> will Deposit The check tomorrow Thank You Jack
>
>
>> On Oct 24, 2013, at 6:22 PM, Jim Wu <jimwu@usachinabridge.com> wrote:
>>
>> Dear Jack,
>>
>> How are you doing? For the car purchasing,
>>
>> 1. Please confirm the book for the Land Rover you already got the
>> build-in in the Southwest Dealer;
>>
>> 2. Please book a Mercedes S550 based on the attachment 1 and you can
>> keep this car if you want or we just send this car to China;
>>
>> http://www.starmotorcars.mercedesdealer.com/
>>
>> 3. Please book a Porsche Cayenne based on the attachment 2;

>>
>> http://houston.porschedealer.com/
>>
>> 4. Please book a BMW X5 based on the attachment 3;
>>
>> http://www.bmwofhoustonnorth.com/
>>
>> You can study the attachment and try to book these four cars and I
>> will reimburse the deposit after I come to Houston. If you have any
>> questions, please let me know.
>>
>> Jim Wu
>> President
>> US-China International Business Network
>> 832-581-3118 (Office)
>> 832-875-1816 (Cell)
>> 832-626-9528 (Fax)
>> <S550 BB.pdf>
>> <CAPEN DBB.pdf>
>> <X5 BM4D.pdf>