United States District Court
Southern District of Texas
**ENTERED**
August 23, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

YOSEMITE AUTO (SHANGHAI) CO., LTD., §
§
      Plaintiff, §
§
VS. §    CIVIL ACTION NO. 4:15-CV-1641
§
JRS METALS, INC., *et al*, §
§
      Defendants. §

## ORDER AND OPINION

Before the Court is Defendants' Motion to Dismiss (Document No. 17), Plaintiff's Response thereto (Document No. 21), and Defendants' Reply (Document No. 22). After considering these documents and the applicable law, the Court concludes that Defendants' Motion to Dismiss (Document No. 17) is DENIED in part and GRANTED in part.

**Background**

Plaintiff Yosemite Auto (Shanghai) Co., Ltd. ("Yosemite") is an LLC "formed and organized under the laws of China" and its executive president is Tom Song ("Song"). (Document No. 1 at 4). Defendants are JRS Metals, Inc. ("JRS Metals") and Dhanrajmal Chandrabose, also known as Jack Bose ("Bose"). *Id*. at 1. Bose is a resident of Texas and is the president and director of JRS Metals, which is a corporation formed under Texas law. *Id*. at 5. Other relevant parties include Jim Wu ("Wu"), the managing member of Alless Auto, LLC ("Alless Auto"), and SCS Americas, LLC ("SCS"). *Id*. at 4. Plaintiff states that Alless Auto (a Texas LLC) and SCS are its "representative purchasing agents." *Id*.

Plaintiff states that it "engaged in two separate business transactions with Defendants JRS Metals and Bose, [...] for the purchase of high-performance automobiles through agent

intermediaries," which would later be sold in China. *Id.* at 2, 6. Wu introduced Song to Defendant Bose in early November 2013, and thereafter Bose proposed that Song "acquire vehicles from a Houston automobile dealership and explained that because of his close business relationship with the dealer's sales manager, he could acquire up to forty (40) Range Rover model V6 vehicles and 'at least twenty (20) of these vehicles could be delivered to YOSEMITE by mid-April 2014.'" *Id.* In an initial transaction Bose did provide Yosemite with eleven vehicles, but Bose later failed to deliver twenty-eight vehicles as promised:

> Based on oral representations, records and documentation, including evidence of alleged purchase contracts, payment receipts and copies of checks provided by BOSE, YOSEMITE was induced to believe that BOSE would provide twenty (20) Range Rover Model V6 vehicles, plus an additional eight (8) Range Rover Sport models, which were to be delivered to YOSEMITE.
>
> In reliance upon statements and/or documentation provided by BOSE, YOSEMITE paid $2,028,765 for the twenty (20) Range Rovers V6 vehicles and an additional $701,235 for the eight (8) Range Rover Sport models. Despite providing these payments to BOSE and JRS METALS, none of these vehicles were ever delivered. Despite numerous demands, BOSE refused to return the money or to deliver the vehicles, as promised.

*Id.* at 2-3. Therefore Plaintiff has filed several claims against Defendants, including breach of contract under the United Nations Convention on Contracts for the International Sale of Goods (the "CISG") and under the common law, fraud, and unjust enrichment. (Document No. 1 at 15-23).

Defendants file this Motion to Dismiss pursuant to Federal Rules of Civil Procedure, Rules 9(b), 12(b)(6), 12(b)(7), 17, and 19, and ask the Court to dismiss Plaintiff's Complaint "(1) for failure to state a claim upon which relief can be granted, (2) for failure to properly plead fraud with particularity, (3) for failure to join a necessary and indispensable party, and (4) for failure to prosecute in the name of the real party in interest." (Document No. 17 at 1).

**Standard of Review**

Rule 12(b)(6)

When a district court reviews a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), it must construe the complaint in favor of the plaintiff and take all well-pleaded facts as true. *Randall D. Wolcott, MD, PA v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (citing *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," stating a claim that is "plausible on its face." *Id*. at 545, 547 (citations omitted).

"'A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Montoya v. FedEx Ground Package System, Inc.*, 614 F.3d 145, 148 (5th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The plausibility standard is not akin to a "probability requirement," but asks for more than a "possibility that a defendant has acted unlawfully." *Twombly*, 550 U.S. at 556.

Rule 12(b)(7)

Rule 12(b)(7) permits dismissal for "failure to join a party under Rule 19." Rule 19 states that: "[a] person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19. Rule 19 addresses required joinder of all parties whose presence is necessary for the fair and complete resolution of the dispute in a lawsuit and, if those parties cannot be joined, for dismissal of the action. *HS*

*Resources, Inc. v. Wingate*, 327 F.3d 432, 438 (5th Cir. 2003).

<u>Rule 9(b)</u>

Federal Rule of Civil Procedure 9(b) provides, "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person must be averred generally." "Rule 9(b) requires the plaintiff to allege as to each individual defendant 'the nature of the fraud, some details, a brief sketch of how the fraudulent scheme operated, when and where it occurred, and the participants." *Hernandez v. Ciba-Geigy Corp. USA*, 200 F.R.D. 285, 291 (S.D. Tex. 2001). "'In cases concerning fraudulent misrepresentation and omission of facts, Rule 9(b) typically requires the claimant to plead the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the representations misleading.'" *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1174 (5th Cir. 2006) (quoting *United States ex. rel. Riley v. St. Luke's Hosp.*, 355 F.3d 370, 381 (5th Cir. 2004)).

**Discussion**

<u>Section 9.051 and the CISG</u>

Defendants first argue that Plaintiff, a Chinese LLC, is not registered[1] to do business in Texas, and therefore "lacks the capacity to maintain this action." (Document No. 17 at 1). Texas law provides that,

> (b) A foreign filing entity or the entity's legal representative may not maintain an action, suit, or proceeding in a court of this state, brought either directly by the entity or in the form of a derivative action in the entity's name, on a cause of action that arises out of the transaction of business in this state unless the foreign filing entity is registered in accordance with this chapter.

Tex. Bus. Orgs. Code Ann. § 9.051. In analyzing a predecessor to this statute, this Court explained that "Article 8.18 precludes a foreign corporation, which is transacting, or has

---

[1] The parties agree that Yosemite is not registered.

transacted business in Texas, without a certificate of authority, from obtaining affirmative relief in the courts of Texas on any matter arising out of the transaction of intrastate business. This applies as well to a federal district court *sitting in diversity*." *Kutka v. Temporaries, Inc.*, 568 F. Supp. 1527, 1532 (S.D. Tex. 1983) (emphasis added). However, this bar does not apply where a federal district court's jurisdiction is not based solely on diversity. *In re Funnel Sci. Internet Mktg., LLC*, No. 14-42120, 2016 WL 1117414, at *14 (E.D. Tex. Mar. 21, 2016) (Section 9.051 did not prevent unregistered debtors from seeking affirmative relief of attorney's fees from creditors, because the controversy arose from bankruptcy jurisdiction, not diversity jurisdiction.) (citing *Rockstar Consortium US LP, Inc. v. Samsung Electronics Co., Inc.*, 2014 WL 1998053 at *2 (E.D. Tex. May 15, 2014) ("It is hard to see how a *federal* court adjudicating an action arising out of *federal* [patent] law can be considered a Court 'of' the State of Texas" under Section 9.051.) (emphasis in original)). As described below, Plaintiff's breach of contract claim under the CISG arises under federal law; therefore Defendants' argument fails. Section 9.051 cannot prevent a party from maintaining a claim based on federal question jurisdiction.

The CISG[2] "governs 'contracts of sale of goods between parties whose places of business are in different States [nations] ....'" *Honey Holdings I, Ltd. v. Alfred L. Wolff, Inc.*, 81 F. Supp. 3d 543, 551 (S.D. Tex. 2015) (citing CISG Art. 1(1)(a)). It is a "self-executing treaty with the preemptive force of federal law, preempting both state common law[3] and the UCC, "so long as the parties have not chosen to exclude its application.[4]" *Id*. at 551-2 (citations omitted). Because

---

[2]  Both the United States and China are signatories to the CISG. U.S. Ratification of 1980 United Nations Convention on Contracts for the International Sale of Goods: Official English Text, 52 FR 6262-02. The stated purpose of the CISG is "the adoption of uniform rules which govern contracts for the international sale of goods and take into account the different social, economic and legal systems would contribute to the removal or legal barriers in international trade and promote the development of international trade." *Honey Holdings I, Ltd. v. Alfred L. Wolff, Inc.*, 81 F. Supp. 3d 543, 551 (S.D. Tex. 2015) (citations omitted).
[3]  As the CISG preempts common law, Plaintiff's breach of contract claim under the common law is preempted.
[4]  Defendants do not argue that the alleged contract opted out of the CISG. *See BP Oil Int'l, Ltd. v. Empresa Estatal Petroleos de Ecuador*, 332 F.3d 333, 337 (5th Cir. 2003) ("As incorporated federal law, the CISG governs the

the CISG is federal law, Plaintiff can maintain its claim in Texas without registration under §9.051.

<u>Illegality</u>

Defendants also provide an extensive argument that Texas law, not the CISG, governs the validity of the contract (as opposed to its formation). (Document No. 22 at 4). Regardless, this argument will not warrant dismissal of Plaintiff's claim at this stage in the litigation. Defendants cite *Denson v. Dallas County Credit Union* for the proposition that "Texas law unequivocally condemns as illegal and unenforceable a contract for the sale of cars by an unlicensed seller;" therefore Plaintiff's case must be dismissed. *Id.* at 4 (citing 262 S.W. 3d 846, 852 (Tex. App. 2008)). However, in *Denson* the Court was ruling on a summary judgment motion, not a motion to dismiss. The Court explained that illegality must be pleaded as an affirmative defense, and a party must "expressly present and conclusively prove each essential element of an affirmative defense" in order to prevail on a motion for summary judgment. *Id.* (citing *Villanueva v. Gonzalez,* 123 S.W.3d 461, 464 (Tex. App.-San Antonio 2003, no pet.); Tex. R. Civ. P. 94). To the extent that Defendants wish to argue that the contract at issue was unenforceable due to illegality, they need to plead illegality as an affirmative defense and make a motion for summary judgment (when appropriate). At this stage in the litigation the Court will not rule on this issue.

Similarly, the cases cited by Defendants for the proposition that Plaintiff's tort claims are barred by the Texas illegal acts rule do not show that dismissal would be appropriate at this stage in the litigation. As described above, *Denson* involved dismissal on summary judgment. The same is true of *Villanueva* and *Saks v. Sawtelle, Goode, Davidson & Troilo*. 123 S.W. at 464; 880 S.W.2d 466, 468 (Tex. App. 1994), *writ denied* (Feb. 16, 1995). *See also Macias v. Moreno*,

---

dispute so long as the parties have not elected to exclude its application.").

30 S.W.3d 25, 29 (Tex. App. 2000) (appeal from jury verdict); *Stevens v. Hallmark*, 109 S.W.2d 1106, 1106 (Tex. Civ. App. 1937) (appeal from trial court judgment). Therefore the Court will not dismiss Plaintiff's tort claims on the basis of illegality at this time.

<u>Formation of a Contract under the CISG</u>

Defendants also argue that Plaintiff has failed to allege a contract between Yosemite and JRS Metals, even if the CISG does apply. (Document No. 22 at 7). Defendants state that "Plaintiff's Complaint is devoid of any allegation that Defendants made any contract offer to Plaintiff which Plaintiff unequivocally accepted." *Id*.  Defendants also state "there is no statement of what particular goods are to be delivered by which party and for what consideration." *Id*. at 8.

The Court disagrees. Plaintiff's Complaint currently contains sufficient allegations that Defendant Bose offered to sell twenty vehicles to Plaintiff, and that Plaintiff accepted that offer through its payment[5] to Defendant JRS Metals:

> A third in-person meeting between Tom Song, Jim Wu and BOSE took place at the Tang Dynasty Restaurant in Shanghai, China, on or about December 9, 2013, which was also attended by other YOSEMITE's corporate executive officers. Defendant BOSE represented to Tom Song and other executive officers that he purchased the twenty (20) Range Rover vehicles and could assure their delivery to YOSEMITE by April 2014.
>
> In early January 2014, Defendant BOSE provided copies of payment receipts and a copy of his check to Jim Wu and YOSEMITE to prove he had paid for and owned the twenty (20) Range Rover vehicles. He demanded to be paid a premium increased price above his purchase prices for the vehicles, contending that had "locked in" delivery for all twenty (20) vehicles and would confirm their delivery to YOSEMITE. […]
>
> BOSE repeatedly demanded YOSEMITE to immediately pay for the twenty (20) Range Rovers he claimed to have purchased from the automobile dealership. […]

---

[5] Article 18 of the CISG states:
> However, if, by virtue of the offer […] the offeree may indicate assent by performing an act, such as one relating to the dispatch of the goods or payment of the price, without notice to the offeror, the acceptance is effective at the moment the act is performed, provided that the act is performed within the period of time laid down in the preceding paragraph.

CISG. Art. 18 (3).

> In reliance on the records and documents provided by BOSE, Alless Auto paid JRS METALS, on behalf of YOSEMITE, a total of $2,028,765 for the twenty "Range Rover" vehicles.

(Document No. 1 at 8-9). Taking these facts as true, Plaintiff has plausibly alleged that there was a contract, for the purchase of twenty vehicles for the price of $2,028,765, between Yosemite and JRS Metals. Similarly, Plaintiff has plausibly alleged that there was an agreement between Bose and Yosemite for the purchase of eight vehicles for the price of $701,235:

> Within this same time frame, from December 2013 through April 2014, BOSE acquired and sold a separate group of eight (8) Range Rover Sport vehicles that he was to arrange to be delivered to YOSEMITE.
>
> YOSEMITE paid BOSE and JRS METALS for the above described (8) Range Rover Sport vehicles. Their payments totaled $701,235, including an initial deposit of $30,000 that had been paid in December 2013. After BOSE represented these vehicles were confirmed and awaiting immediate delivery, he was paid the remaining balance by SCS in April 2014.
>
> Despite BOSE's assurances the delivery of the (8) Range Rover Sports vehicles were en route, none had been shipped and were never delivered as promised. YOSEMITE has demanded but Defendants have refused to return the monies received from YOSEMITE as payment for the vehicles.

*Id*. Therefore Defendants' argument fails; Plaintiff has plausibly alleged that a contract was formed.

<u>Fraud Claims and Rule 9(b)</u>

Defendants also argue that Plaintiff failed to plead fraud with particularity, as required under Rule 9(b). (Document No. 17-1 at 10). Defendants argue that "Yosemite's fraud claims are based exclusively on alleged misrepresentations by JRS Metals to Alless Auto, not to Yosemite" and that Yosemite's Complaint "includes no allegations indicating the specific 'time, place and contents' of misrepresentations by JRS Metals or Chanrabose directly to Yosemite." *Id*. (citations omitted).

The Court disagrees with Defendants, as the Complaint includes allegations of misrepresentations made directly to Yosemite (through its President, Song). Examples include:

> On November 12, 2013, Defendant BOSE met with Tom Song at a downtown Restaurant in Houston, Texas and explained he could obtain up to 40 "pre-ordered" and "preowned" Range Rover vehicles for delivery to YOSEMITE from "Momentum Jaguar Volvo Porsche", an automobile dealership specializing in the sale of high performance vehicles ["Momentum" or "Momentum Automobile Dealership"] and that these vehicles were available because of a series of cancelled sales transactions. […]

> A third in-person meeting between Tom Song, Jim Wu and BOSE took place at the Tang Dynasty Restaurant in Shanghai, China, on or about December 9, 2013, which was also attended by other YOSEMITE's corporate executive officers. Defendant BOSE represented to Tom Song and other executive officers that he purchased the twenty (20) Range Rover vehicles and could assure their delivery to YOSEMITE by April 2014.

> In early January 2014, Defendant BOSE provided copies of payment receipts and a copy of his check to Jim Wu and YOSEMITE to prove he had paid for and owned the twenty (20) Range Rover vehicles. He demanded to be paid a premium increased price above his purchase prices for the vehicles, contending that had "locked in" delivery for all twenty (20) vehicles and would confirm their delivery to YOSEMITE.

(Document No. 1 at 7-8). These allegations include direct communications between Bose and Song, and include details such as the time, place and nature of the statements, which were misleading because, as alleged in the Complaint, Bose and JRS Metals never delivered the vehicles. *See Residescu v. Midland Credit Management, Inc.*, 435 F. Supp. 2d 1090, 1095 (S.D. Cal. 2006) (citing *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994); *Vess v. Ciba-Geigy Corp. v. USA.*, 317 F.3d 1097, 1106 (9th Cir. 2003); *Yourish v. California Amplifier*, 191 F.3d 983, 993 (9th Cir. 1999)).

Furthermore, misrepresentations to the Plaintiff's agent, Alless Auto, are also actionable by Plaintiff: "A person who fraudulently obtains a contract through […] an agent acting within the scope of his power to bind the principal, or who by fraud causes the agent to do what would be a violation of his duty to the principal if the agent knew the facts, is subject to liability to the principal whether the fraud is practiced upon the agent or upon the principal." Restatement

(First) of Agency § 315 (1933).[6] *See also In re J.P. Jeanneret Associates, Inc.*, 769 F. Supp. 2d 340, 372 (S.D.N.Y. 2011) ("[S]tatements made to an agent are deemed made to its principal.").

Therefore Defendants' Motion pursuant to Rule 9(b) fails.

FRCP 17

Rule 17 states that "[a]n action must be prosecuted in the name of the real party in interest."  Fed. R. Civ. P. 17. Defendants argue that Plaintiff's Complaint "fails to prosecute the action in the name of the real party in interest," in violation of Rule 17, and therefore should be dismissed. (Document No. 17-1 at 11). Defendants argue that Jim Wu or Alless Auto should be prosecuting these claims, but instead "Yosemite has attempted to pose as the alleged contracts' counter party, even though any negotiations occurred solely between JRS Metals and Alless Auto, not Yosemite." *Id*. As described above, in the section on Rule 9(b), the Complaint *does* include allegations of negotiations which included Yosemite. Furthermore, the Complaint also states:

> Defendants BOSE and JR METALS each knew and fully understood that (1) any transaction involving the purchase, transport and resale of the vehicles were to be first approved and authorized *by YOSEMITE*, and (2) the transaction would be conducted *directly with YOSEMITE* and *YOSEMITE would be responsible to provide payments* for the vehicles.

> On November 12, 2013, Defendant BOSE met with Tom Song at a downtown Restaurant in Houston, Texas and explained he could obtain up to 40 "pre-ordered" and "preowned" Range Rover vehicles for delivery *to YOSEMITE* from "Momentum Jaguar Volvo Porsche", an automobile dealership specializing in the sale of high performance vehicles

---

[6] Comment B explains further:
> The fraud may be directed towards the agent, as where the other party makes misrepresentations concerning goods which he sells to the agent, or it may be directed towards the principal as where, with or without collusion with the agent who is representing the principal, the other party makes statements which deceive the principal and cause him to authorize the agent to enter into the transaction. *One making a misrepresentation to an agent in order to obtain a contract with the principal is subject to liability if the contract is obtained as a result of it, whether the agent to whom the statement is made, or another agent, or the principal consummates the transaction in reliance upon it.* The rule stated in this Section applies whether the principal is disclosed, partially disclosed, or undisclosed.

Restatement (First) of Agency § 315 (1933) (emphasis added).

["Momentum" or "Momentum Automobile Dealership"] and that these vehicles were available because of a series of cancelled sales transactions.

In reliance on the records and documents provided by BOSE, Alless Auto paid JRS METALS, *on behalf of YOSEMITE*, a total of $2,028,765 for the twenty "Range Rover" vehicles.

(Document No. 1 at 6-9) (emphases added). These allegations are sufficient to allege that Yosemite was a party to the contract, and therefore is a real party in interest.

Furthermore, even if Wu and Alless Auto assisted in negotiating the contract, they are not necessarily parties to the contract, because they were acting as agents of the Plaintiff. *Id.* at 2. *See DK Joint Venture 1 v. Weyand*, 649 F.3d 310, 319 (5th Cir. 2011) ("[U]nder traditional agency principles, unless the agent agrees to be personally bound, the only other way ... an agent can be bound by the terms of a contract is if she is made a party to the contract by her principal acting on her behalf with actual, implied, or apparent authority.") (interpreting both Texas and federal agency law) (citation omitted); *Westmoreland v. Sadoux*, 299 F.3d 462, 466-67 (5th Cir. 2002) ("An agent is not ordinarily liable under the contract he executes on behalf of his principal, so long as his agency is disclosed, but he is personally liable if his acts breach an independent duty."); Restatement (Third) Of Agency § 6.01 (2006) ("When an agent acting with actual or apparent authority makes a contract on behalf of a disclosed principal, (1) the principal and the third party are parties to the contract; and (2) the agent is not a party to the contract unless the agent and third party agree otherwise."). Therefore Defendants' argument under Rule 17 fails.

FRCP 19

Defendants also argue that "the claims and matters alleged in Yosemite's Complaint cannot be adjudicated without the joinder of Jim Wu and/or Alless Auto, the actual parties to the alleged contracts." (Document No. 17-1 at 13). However, as described above, Plaintiff has

11 / 14

alleged that the agreement existed between Yosemite and Defendants: "the transaction would be conducted *directly with YOSEMITE* and *YOSEMITE would be responsible to provide payments for the vehicles.*" (Document No. 1 at 6) (emphasis added). Wu and Alless Auto were merely agents for Plaintiff. *Id.* at 2. An agent is not typically a party to a contract (discussed *supra*), nor is an agent's joinder required under Rule 19. *Nottingham v. Gen. Am. Commc'ns Corp.*, 811 F.2d 873, 880 (5th Cir. 1987) (Rule 19 does not require joinder of principal and agent); *Depriest v. BASF Wyandotte Corp.*, 119 F.R.D. 639, 640 (M.D. La. 1988) (same). Defendants' Rule 19 argument fails.

Unjust Enrichment/Unclean Hands

Defendants also argue that "Yosemite's equitable unjust enrichment claim is subject to the ancient precept that he who comes into equity must come with clean hands," and that "because Yosemite's unjust enrichment claim depends on an illegal and fraudulent scheme for the unlicensed sale of vehicles in violation of Texas law and their immediate illegal and fraudulent export […] Yosemite's unclean hands bar recovery for unjust enrichment as a matter of law." (Document No. 17-1 at 9).

"A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Harris Cty. Texas v. MERSCORP Inc.*, 791 F.3d 545, 561 (5th Cir. 2015). "Unjust enrichment[7] occurs when a person has wrongfully obtained a benefit or has passively received one which it would be

---

[7] "Texas courts are in conflict about whether there is an independent cause of action for unjust enrichment under Texas law. Despite the lack of unanimity among Texas courts, one thing remains clear: even in the cases [suggesting unjust enrichment is not an independent cause of action,] the courts have still allowed plaintiffs to recover based on the theory of unjust enrichment so long as a person has obtained a benefit from another by fraud, duress, or the taking of undue advantage." *BP Expl. & Prod. Inc. v. Cashman Equip. Corp.*, 132 F. Supp. 3d 876, 889-90 (S.D. Tex. 2015), *on reconsideration in part sub nom. BP Expl. & Prod. Inc. v. Cashman Equip. Corp.*, No. A. H-13-3046, 2016 WL 1399259 (S.D. Tex. Apr. 8, 2016) (internal citations and quotations omitted).

unconscionable to retain. Usually if a valid, express contract exists[8] covering the subject matter of the parties' dispute, a plaintiff cannot recover under a quasi-contract theory such as unjust enrichment." *BP Expl. & Prod. Inc. v. Cashman Equip. Corp.*, 132 F. Supp. 3d 876, 889-90 (S.D. Tex. 2015), *on reconsideration in part sub nom. BP Expl. & Prod. Inc. v. Cashman Equip. Corp.*, No. A. H-13-3046, 2016 WL 1399259 (S.D. Tex. Apr. 8, 2016) (citations omitted).

"The 'unclean' hands doctrine is an affirmative defense to equitable relief [such as unjust enrichment]," which "requires that the party seeking equitable relief come into court with clean hands." *Balfour Beatty Rail, Inc. v. Kansas City S. Ry. Co.*, No. 3:10-CV-1629-L, 2016 WL 1170829, at *24 (N.D. Tex. Mar. 25, 2016) (citation omitted). As described above, a party must "expressly present and conclusively prove each essential element of an affirmative defense." *Denson*, 262 S.W. 3d at 852. Defendants have not done so[9] at this stage in the litigation; they merely assert that Plaintiff participated in illegal activity, and is therefore barred from relief. This is not a sufficient basis to dismiss Plaintiff's claim.

Conclusion

The Court hereby

ORDERS that Defendants' Motion to Dismiss (Document No. 17) is DENIED in part and GRANTED in part. Defendants' Motion to Dismiss as to Plaintiff's breach of contract claim under the common law is GRANTED. Defendants' Motion to Dismiss is DENIED as to all of

---

[8] Plaintiff's unjust enrichment claim under Texas law is not preempted by the CISG at this time, because Defendants dispute the existence of the contract. *See Weihai Textile Grp. Imp. & Exp. Co. v. Level 8 Apparel, LLC*, No. 11 CIV. 4405 ALC FM, 2014 WL 1494327, at *15 (S.D.N.Y. Mar. 28, 2014) (unjust enrichment claim preempted by the CISG where the parties agreed that valid contracts existed) (citing *Electrocraft Ark., Inc. v. Super Elec. Motors. Ltd.*, No. 4:09 cv 00318 (SWW), 2009 WL 5181854, at *7 (E.D. Ark. Dec. 23, 2009); *Semi–Materials Co., Ltd. v. MEMC Elec. Materials, Inc.,* No. 4:06 CV 1426 (FRB), 2011 WL 65919, at *3 (E.D . Mo. Jan. 10, 2011)).

[9] For example, Defendants do not explain how Plaintiff's illegal car sales injured them. "To invoke the doctrine, a defendant must show that [it] was injured by the plaintiff's improper acts." *Balfour Beatty Rail, Inc. v. Kansas City S. Ry. Co.*, No. 3:10-CV-1629-L, 2016 WL 1170829, at *24 (N.D. Tex. Mar. 25, 2016) (citing *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 796 (5th Cir. 1999)).

Plaintiff's other claims.

SIGNED at Houston, Texas, this 23rd day of August, 2016.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE